**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| EDWARD PARTLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01092-TWP-TAB |
| | ) | |
| BRANDON MILLER, AMANDA COPELAND, | ) | |
| and ARAMARK CORPORATION[1] | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants

Brandon Miller ("Miller"), Amanda Copeland ("Copeland"), and Aramark Correctional Services,

LLC ("Aramark") (collectively, "Defendants"). (Dkt. 36.)  Plaintiff  Edward Partlow ("Partlow")

is a prisoner at Pendleton Correctional Facility ("Pendleton").  This action is based on his

allegations that the Defendants implemented a program requiring him to reuse one spork and cup

at all meals, that he lacks the means by which to adequately sanitize his spork and cup, and that he

has become sick as a result.  Because the undisputed facts show that the Defendants are not

responsible for any violation of Partlow's rights, the Court **grants** their motion for summary

judgment, dismisses this action, and directs the entry of final judgment.

## I.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law.  *See* Federal Rule of Civil Procedure 56(a).  Whether a party asserts that a fact

---

[1] The **Clerk is directed** to change Aramark's name on the docket from "Aramark Corporation" to "Aramark Correctional Services, LLC."  (*See generally* Dkt. 38.)

is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827

(7th Cir. 2014).  The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them.  *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572–73 (7th Cir. 2017).  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.  FACTS

Partlow's claims arise following a change in food-service practices implemented at PENDLETON in June 2019.  Aramark was, and still is, a private entity that contracts to provide food service to inmates at Indiana Department of Correction ("IDOC") facilities, including PENDLETON.  (Dkt. 37-1 at ¶ 5.)  Copeland is Aramark's Vice President of Operations.  *Id.* at ¶ 2.  In 2019, she was an Aramark District Manager for the area including Pendleton.  *Id.* at ¶ 3.  Miller was and is employed by Aramark as Pendleton's Food Services Director. (Dkt. 37-2 at ¶ 2.)

In addition to preparing and serving food, Aramark contracted to "maintain[] a sanitary food service area." (Dkt. 37-1 at ¶ 5.)  The status quo before June 2019 is not entirely clear based on the parties' submissions.  However, the Court infers for purposes of summary judgment that inmates arrived at the dining hall for their meals and received dishes and utensils that they returned at the end of the meal.  The Court also infers that Aramark personnel then collected, washed, and stored dishes and utensils until the next meal.

Beginning in June 2019, inmates in the general population were issued two reusable cups and one reusable spork.  *Id.* at ¶ 11.  Inmates in restricted housing were issued one cup and one spork.  *Id.*  Inmates' names and identification numbers were engraved on their items and they were required to bring their cups and sporks to the dining hall for each meal.  *Id.*  Between meals, inmates were responsible for sanitizing and storing their own cups and sporks.  *Id.* at ¶ 13.

3

When this change was implemented, Partlow did not have access to hot water and soap to clean his cup and spork.  The water in his cell was cold.  (Dkt. 44 at 3.)  He also did not have access to hot water in a common area, such as a bathroom or washing station.  *Id.* at ¶ 7.  He sometimes had access to soap, but not always.  *Id.* at ¶¶ 5–6.  Partlow also did not have anything to store or carry his cup and spork in.  *Id.* at ¶ 11.  He became sick multiple times because he could not keep his cup and spork clean.  *Id.* at ¶ 12.

The origins of the new program are in dispute.  Miller states that the IDOC "instructed" him "to implement a re-usable cup and spork practice at" Pendleton.  (Dkt. 37-2 at ¶ 4[2].)  Partlow contends that Miller told another inmate that Aramark initiated the re-usable cup and spork practice and the IDOC approved it at Aramark's request.  (Dkt. 44 at 4.)

Partlow has provided affidavits from 23 inmates attesting that they do not have access to resources necessary to sanitize their cups and sporks.  (Dkt. 44 at 22–67.)  Four of those inmates affirm that Miller told an inmate that Aramark initiated the cup and spork program.  *Id.* at 22–29.

Before going to work for Aramark, Copeland worked ten years for the IDOC, eventually rising to the position of Chief of Staff/Deputy Commissioner of Administration. (Dkt. 37-1 at ¶ 4.)  She understood standard operating procedures to require that all inmates be provided with soap and hygiene products, even if they could not afford to purchase those items themselves.  *Id.* at ¶ 9.  Additionally, based on her experience, she believed that "inmate housing quarters at all prisons . . . had access to hot water."  *Id.* at ¶ 10.  Miller used sinks in the kitchen and restrooms at Pendleton as part of his employment.  (Dkt. 37-2 at ¶ 5[3].)  In his experience, the faucets always produced hot water and were stocked with soap.  *Id.*

---

[2] The Court notes that the paragraph where this citation is found is mis-numbered; the paragraph at issue should actually be paragraph 5.

[3] The Court notes that the paragraph where this information is found is also mis-numbered; the paragraph at issue should actually be paragraph 6.

### III.   ANALYSIS

Conditions of confinement violate the Eighth Amendment when (1) the conditions subject the plaintiff to the denial of the minimal civilized measure of life's necessities, and (2) the defendants are "deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The Seventh Circuit has "identified several situations that" satisfy the first prong of the test, "including lack of heat, clothing, or sanitation." *Id.* (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also, e.g.*, *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (confining inmate in cells covered in massive amounts of feces and flooded with sewage obviously denied minimal civilized measures of life's necessities.).  The second prong—deliberate indifference—requires a showing that the defendant "knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).  "[I]t is not enough for the inmate to show that the official acted negligently or that he or she should have known about the risk." *Id.*  "Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official *actually drew the inference*." *Id.* (emphasis added).

### A.   Copeland and Miller

The second prong—deliberate indifference—undoes Partlow's claims against Copeland and Miller.  The Court assumes for purposes of summary judgment that Copeland and Miller were both involved in and responsible for implementing the spork and cup program. The Court also assumes that the spork and cup program ultimately exposed inmates to a substantial risk of serious harm because they lacked access to the resources necessary to safely clean and store their sporks and cups between uses.

Even so, no evidence in the record shows that Copeland or Miller *knew* inmates would be unable to clean their sporks and cups and store them safely between uses. Both provided declarations that, in their experience, hot water runs through the prison's sinks and they understood inmates were provided with sufficient soap. Partlow has provided extensive evidence that inmates conditions are different than prison staff conditions: inmates lack access to the common areas where staff members wash their hands, the water in their cells is cold, and access to soap is inconsistent. But Partlow provides no evidence that Copeland or Miller *knew* of these conditions. And, even if it seems reasonable to infer that prisoners might not have constant access to hot water and soap, there is no evidence that the Defendants *drew* that inference. *See Townsend*, 522 F.3d at 773.

**B.      Aramark**

Partlow's claim against Aramark fails for similar reasons.

Private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). To prevail, the plaintiff "must challenge conduct that is properly attributable to the municipality itself." *First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

"[T]hree types of actions . . . can support municipal liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (internal quotations omitted). "Inaction, too, can give rise to liability in some instances if it reflects

'a conscious decision not to take action.'" *Dean*, 18 F.4th at 235 (quoting *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017)).

The plaintiff must also prove that the municipal defendant's action or inaction caused a constitutional violation. *LaPorta*, 988 F.3d at 986. "This is a high bar." *Id.* at 987. The plaintiff "must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Id.* Moreover, the plaintiff "must prove that the municipality's action was the 'moving force' behind the federal-rights violation." *Id.* (quoting *Board of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997)).

Assuming Aramark—and not solely the IDOC—is responsible for imposing the spork and cup program, Partlow's claim could take either of two paths: (1) Aramark took an unconstitutional *action* by implementing a policy that exposed inmates to a substantial risk, or (2) Aramark committed an unconstitutional *inaction* by implementing the spork and cup program without ensuring that inmates could adequately sanitize and store their sporks and cups. *See LaPorta*, 988 F.3d at 986; *Dean*, 18 F.4th at 235.

The first path fails because, again, there is no evidence that any Aramark policymaker knew inmates would have difficulty sanitizing or storing their sporks or cups. The second path fails because there is no evidence that Aramark questioned inmates' access to hot water or soap before implementing the spork and cup program but deliberately chose not to look into those suspicions. Common sense would seem to have notified Aramark's actors that inmates who reuse dirty sporks and cups face a substantial risk of serious harm. But nothing in the record indicates that any Aramark decision-maker knew that inmates would be unable to clean their sporks and cup or remained willfully ignorant of that possibility.

7

Last, but not least, the record does not support an inference that the spork and cup program is the "moving force" behind the constitutional violation Partlow alleges. *LaPorta*, 988 F.3d at 987. The Constitution does not entitle prisoners to multiple sets of dishes and utensils, or to receive clean dishes and utensils upon arrival to the dining hall. It entitles them to the minimal civilized measure of life's necessities. *Gray*, 826 F.3d at 1005. Requiring inmates to keep, clean, and reuse their own dishes and utensils does not, by itself, violate this standard. If the spork and cup program is problematic, it is problematic because Partlow lacks access to hot water and soap. (*See* Dkt. 44 at 3–4.) Soap and clean, hot water are necessary for everyday hygienic and sanitary tasks beyond cleaning sporks and cups. Partlow's inability to access these resources—not his restriction to reusable dishes and utensils—appears to be the force behind any inhumane conditions of confinement. And Partlow does not dispute the Defendants' assertion that Aramark has no control over his access to soap and clean, hot water in his cell or in his housing unit—that responsibility lies with the IDOC. (Dkt. 37-1 at ¶ 6.) Accordingly, no Eighth Amendment violation is attributable to Aramark.

## IV.   CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment, Dkt. [36], is **GRANTED**. This action is **dismissed with prejudice**, and the **Clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 2/24/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

8

DISTRIBUTION:

Edward Partlow, 110641
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com